**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE                                            :        CHAPTER 7
PETER J. ORLANDO                                 :
DEBTOR                                           :        CASE NO.05-49612-JBR

**MEMORANDUM OF DECISION ON DEBTOR'S MOTION TO AMEND
BANKRUPTCY PETITION (SCHEDULE C) [#23] AND CHAPTER 7 TRUSTEE'S
MOTION TO COMPROMISE CLAIM WITH JANET D. ORLANDO [#26]**

This matter came before the Court for hearing on the Debtor's Motion to Amend Schedule C [#23], to which the Chapter 7 Trustee objected [#24], and the Chapter 7 Trustee's Motion to Compromise Claim with Janet D. Orlando [#26] to which the Debtor objected [#29].  After the hearing the parties submitted supplemental briefs and a copy of the recording of the Debtor's testimony at his first meeting of creditors, held pursuant to 11 U.S.C. § 341 (the "§ 341 Meeting").  In addition the Debtor and his attorney submitted affidavits in support of the Debtor's position.

**FACTS**

The facts are uncontested.  On October 14, 2005 the Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code, as well as all schedules and the statement of financial affairs.  He did not list any interest in any real estate on schedule A nor any interest in "alimony, maintenance, support or property settlement to which he is or might be entitled" on schedule B.  The column labeled "None" has an "X" next to Item 16 of Schedule B which requests such information.  At the § 341 Meeting, the Debtor, who was sworn, confirmed that the schedules and statements were correct. When asked if he had ever owned any real estate, the Debtor testified that he had but

that his ex-wife received the house in the divorce action. The Chapter 7 Trustee then asked the following:

> *Are you entitled to anything as a result of that divorce, a future payment when they--she sells the house, or anything of that nature?*

The Debtor responded:

> *I do have $80,000 that is supposed to go to the kids' education.*

The Chapter 7 Trustee asked for and received a copy of the Separation Agreement. Exhibit C to the Separation Agreement[1] provides, in pertinent part:

> The Wife hereby agrees to pay the Husband $85,000.00 in exchange for his release of any right, title and interest he may have in the [former marital home]. The payment shall be made as follows: ... The Wife shall pay the Husband $80,000.00 when the youngest child is emancipated. The Wife shall have the right to make payments to the Husband on the outstanding balance of $80,000.00 at any time prior to the emancipation of the child, but shall not be obligated to pay the $80,000.00 until [the youngest child] is emancipated.

---

[1] A copy of Exhibit C was provided to the Court. Exhibit B to the Separation Agreement was not provided to the Court but was summarized in the Trustee's December 12, 2006 letter to the Debtor's attorney.

> Pursuant to Exhibit B, the Debtor and his former spouse agreed to contribute to post-high school educational expenses based on their respective abilities to pay at the time such expenses are incurred. There is no mention in this Exhibit of any connection between payment of the $80,000 to the Debtor, [sic] and the payment of educational expenses.

The Trustee further noted that the Exhibit provided "that so long as the Husband pays $200.00 per week in child support, 'he will have no obligation to contribute' to college expenses of his oldest child."

2

>In the event that the Husband dies prior to the emancipation of [the youngest child], he hereby agrees to forgive the Wife's obligation to pay the $80,000.00 to his estate.

On February 1, 2006 the Debtor received his discharge. Shortly thereafter the Chapter 7 Trustee sought and obtain permission to retain his law firm as counsel to the Trustee. During the 8 months that followed, there was no activity reflected on the docket and thus the Court issued a Notice of Inactivity on November 3, 2006. Immediately thereafter the Chapter 7 Trustee filed a response in which he identified the payment the Debtor was to receive upon the youngest child's emancipation[2] as a "potential asset" and further stated that he had been in contact with the former wife's counsel regarding this matter.

On December 7, 2006 the Debtor filed the First Amended Schedules B and C.[3] On Schedule B, item 16, the Debtor listed for the first time his interest in the future payment under the Separation Agreement as follows:

>Possible interest in Divorce Separation Agreement with Janet D. Orlando excludable pursuant to Code section 541(A)(1) [sic] and (5) as not an interest of the Debtor at the time of filing. Included in bankruptcy petition for purposes of claiming exemption.

The Debtor valued this interest under the Separation Agreement at $0.00 but on Amended Schedule C asserted an exemption of $9,625.00 in the asset pursuant to 11 U.S.C. § 522(d)(5). The Trustee objected arguing that the Debtor was acting in bad

---

[2]The Trustee represented in his pleadings that the youngest child will be emancipated in 2018.

[3]In response to the Court's Order of deficiency, the Debtor subsequently filed a motion to approve the Amended Schedule C as required by MLBR 1009-1.

3

faith and the allowance of the amendments would prejudice the creditors as the Trustee had reached an agreement with the ex-wife to settle the payment obligation. The Trustee then filed a motion to approve the settlement with the Debtor's ex-wife whereby the ex-wife would immediately pay $20,000 in complete satisfaction of her obligation to pay $80,000.00 upon emancipation of the youngest child. The Debtor objected to the settlement on the grounds that the obligation to pay was not an asset of the estate.

The Court held a non-evidentiary hearing, and although neither party requested an evidentiary hearing, the parties agreed to submit a copy of the recording of the § 341 Meeting when it became clear during oral argument that they disagreed as to what the Debtor was asked and what his answer was. The Debtor's counsel also requested and was granted the opportunity to "respond" to the testimony.

The Debtor filed an affidavit following the non-evidentiary hearing. In his affidavit the Debtor testified as follows:

> 5. I have reviewed my response with my attorney, and my statement to the Trustee was truthful. At the time of the Section 341 Creditors Meeting, I was not certain that my wife would have sufficient funds at the time of emancipation of my youngest child. I therefore doubted that I would ever receive the moneys from my wife. But even if I did receive such funds, I knew that the Separation Agreement required me to pay for my children's education.
>
> 6. I have reviewed the separation agreement again today, and I continue to believe that the best interests and welfare of my children are of paramount consideration, as stated in paragraph 3 of Exhibit A [of the Separation Agreement], and that I will continue to be entitled to share in all major decisions regarding their education, as stated in Paragraph 1 of exhibit A. I also continue to believe that Paragraph 5 of Exhibit B [of the Separation Agreement] will require that any funds received from my wife pursuant to Paragraph 1 of Exhibit C [of the Separation agreement] must be considered

4

    available for my children's education, including college.

**DISCUSSION**

    *1. Amendment of the Schedules*

With some limited exceptions not relevant to this case, the filing of a bankruptcy petition creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case...." 11 U.S.C. § 541(a)(1). "Whether property is 'property of the estate' requires a federal analysis under Section 541 but as the Supreme Court has articulated, '[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.' *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)." *In re Wiesner*, 267 B.R. 32, 37 n.7 (Bankr. D. Mass. 2001). Under Massachusetts law the right to "[c]hoses in action, rights and other interests, the benefits of which may be receivable now and in the future are classifiable as intangible personal property." *Hanify v. Hanify*, 403 Mass. 184, 187, 526 N.E.2d 1056, 1059 (1988)(citations and internal quotation marks omitted).

There is no doubt that the Debtor's right to receive $80,000.00, albeit in the future, is an asset. The payment is not alimony; it is clearly a property settlement. It is by its very terms the final payment to the Debtor for release of whatever interest he may have had in the marital home. Moreover the Debtor's assertion that the $80,000 is not an asset because it was somehow earmarked for his children's education is not supported by the express language of Exhibit C to the Separation Agreement. The

$80,000 payment was the remainder of the sum the Debtor was to receive in exchange for waiving any rights to the marital home. The fact that the right of the debtor to receive funds might be "forgiven" or extinguished on his death does not diminish that fact that the Debtor had an "interest" at the commencement of the case.

Having determined that the right to receive the $80,000 future payment is an asset of the estate, the Court turns to the question of whether the Debtor is entitled to now schedule and exempt the asset, or at least $9,625 attributable to this asset. Fed. R. Bank. P. 1009(a) permits a debtor to amend his schedules "as a matter of course at any time before the case is closed." Nevertheless a bankruptcy court may deny an amendment "based upon a showing of either: (1) bad faith; or (2) prejudice to creditors or third parties..... A mere allegation by an objector of bad faith is insufficient. Bad faith and/or prejudice must be shown by clear and convincing evidence." *Wood v. Premier Capital, Inc. (In re Wood)*, 291 B.R. 219, 228 (1st Cir. BAP 2003)(internal citations and quotation marks omitted).

Whether a debtor acted in bad faith turns on an analysis of the totality of the circumstances. *In re Kaelin*, 308 F.3d 885, 889 (8th Cir.2002). Often it is shown by the intentional concealment of the existence of an asset. "Intent to conceal is a factual determination to be made by the bankruptcy court based upon the evidence presented and inferences drawn therefrom at trial." *Wood,* 291 BR. at 221.

"Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate. " *Id.* at 226. "A debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed

6

claims or has no motive for their concealment." *In re Park*, 246 B.R. 837, 843 (Bankr. E.D. Tex. 2000)(internal quotation marks and citations omitted). A debtor's intentional and deliberate delay in amending an exemption in order to obtain an economic or tactical advantage at the expense of the estate can constitute bad faith. *In re Kaufman*, 299 B.R. 641, 644 (Bankr. M.D.Fla. 2003).

In the instant case, the Debtor failed to disclose the asset on his original schedules; his response to Item 16 of Schedule B was not accurate. Similarly his response to the Trustee's question at the § 341 Meeting was also not accurate. The Debtor has presented no evidence that the Separation Agreement required the $80,000 to be used only, or even primarily, for the children's education. Indeed there is nothing presented to the Court that even suggests that whatever obligation, if any, the Debtor has to contribute to his children's education is linked to the $80,000 payment. While he argues that his children's best interest and welfare are of paramount importance, his desire to contribute to their education, although understandable, cannot trump the express language of Exhibit C. Nor can such a desire serve as an excuse for not disclosing this asset when the case was filed.

*2. Approval of the settlement*

The standard for approval of a settlement pursuant to Fed. R. Bankr. P. 9019(a) requires the Court to balance the value of the claim to be compromises and the value of the compromise to the estate. The factors to be considered include

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors

7

and a proper deference to their reasonable views in the premise.

*Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995).

The proposed settlement is in the estate's best interest.  To keep the case open for 11 years to collect $80,000 is impractical and does not serve the creditors. Moreover, should the Debtor die prior to then, the right to collect the $80,000 is lost. Neither party has introduced any evidence of the ex-wife's financial status but the Debtor testified in his affidavit that he doubted she would have the funds to make this payment.

**CONCLUSION**

For the foregoing reasons, the Amendment to Schedules will be STRICKEN and the Motion to Amend schedule C will be DENIED.  The Motion to Compromise claim will be ALLOWED.

Separate orders will issue.

Dated: February 2, 2007                             _____
                                                    Joel B. Rosenthal
                                                    United States Bankruptcy Judge